IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN CHRISTIAN MURRAY,      :
                             :
          Plaintiff          :
                             :
     v.                      :     CIVIL NO. 4:CV-13-258
                             :
DANIEL S. KEEN, ET AL.,      :     (Judge Brann)
                             :
          Defendants         :

## MEMORANDUM

March 11, 2014

## Background

Shawn Christian Murray initiated this pro se civil rights action regarding events which allegedly transpired during his prior confinement as a pre-trial detainee at the Franklin County Prison, Chambersburg,  Pennsylvania.[1]  Named as Defendants are the following Franklin County officials: Commissioners David Keller, Robert Thomas, and Robert Ziobrowski; Sheriff Dane Anthony; President Judge Douglas Herman; Controller Carol Diller; and District Attorney Matthew Fogal.  Plaintiff is also proceeding against seven (7)  employees of the Franklin

---

[1]  Plaintiff is presently confined at the State Correctional Institution, Camp Hill, Pennsylvania (SCI-Camp Hill).  See Doc. 26.

County Prison:  Warden Daniel Keen; Deputy Wardens Russell Rouzer and

Michelle Weller; Deputy of Inmate Records Carol Lemaster; Business Director

Tammy Heckman; Intake Nurse Jane Doe[2]; and Director of Treatment Jessica

Sterner.

Plaintiff states that he entered the Franklin County Prison as a pre-trial

detainee on August 27, 2012.  See Doc. 1, ¶ 22.  Upon his arrival, Murray was

processed by Intake Nurse Jane Doe who purportedly treated him in a hostile

manner.  Due to her personal dislike of Plaintiff, Nurse Doe allegedly engaged in

retaliation by improperly assigning him to  administrative segregation as having

mental health issues.  Murray remained in administrative segregation for a period

of eleven (11) days.

The Complaint next contends throughout the course of Murray's

confinement in the Franklin County Prison, he suffered sleep deprivation, eyesight

---

[2]     John/Jane Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them.  Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").
    Based on this Court's review of the record, although this action was filed over a year ago, Plaintiff has not yet provided this Court with the identity of Defendant Nurse Jane Doe.

problems, and headaches from the continuous lighting in the cells. Plaintiff adds that in retaliation for filing a grievance regarding the interior cell constant illumination, the lights outside the cell are now also continuously left on at night. See id. at ¶ 26.

Plaintiff next contends that he was granted a medical exemption to prison policy by a Doctor Tonya which allows him to lay under the blanket on his bed from 6:30 to 18:30.[3]  However, despite having medical authorization and his status as a pre-trial detainee, prison officials have refused to allow him to stay under the blanket thereby aggravating the tendonitis in his shoulders. According to the Complaint, the conditions of his pre-trial confinement were also unconstitutional because the prison has no outdoor recreation/yard and inmates are never permitted to leave their cell block. See id. at ¶ 42.

It is further alleged that prison officials acted improperly by deducting money from Murray's inmate account for room and board. Plaintiff seeks injunctive relief as well as compensatory and punitive damages

Defendants have responded to the Complaint by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Doc. 21. The unopposed motion is ripe for consideration.

---

[3]   Presumably, 6:30 a.m. to 6:30 p.m.   See Doc. 1, Exhibits C & D.

**Discussion**

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under  Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct. at 1949.  Legal conclusions must be supported by factual allegations and the

complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

Finally, Plaintiff describes himself as being a pre-trial detainee.  The Third Circuit Court of Appeals has observed that claims by pre-trial detainees have parameters that are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment.  Keller v. County of Bucks, 2006 WL 3779749 *3 (3d Cir.  Dec. 22, 2006).

**Mootness**

Murray's Complaint, in part, seeks an award of injunctive relief requesting

that Franklin County Prison officials: discontinue charging for room and board; using administrative segregation as punishment; provide adequate outdoor recreation; and allow prisoners to be under their blankets.  <u>See</u>  Doc. 1, p. 22.

Federal courts can only resolve actual cases or controversies, U.S. Const., Art. III, § 2, and this limitation subsists "through all stages of federal judicial proceedings. . . ." <u>Id</u>. see also  <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 (1974) (the adjudicatory power of a federal court depends upon "the <u>continuing</u> existence of a live and acute controversy)" (emphasis in original).  An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." <u>Id</u>. at n.10 (citations omitted).  "Past exposure to illegal conduct is insufficient to sustain a present case or controversy . . . if unaccompanied by continuing, present adverse effects." <u>Rosenberg v. Meese</u>, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974)); <u>see</u> <u>also</u> <u>Gaeta v. Gerlinski</u>, Civil No. 3:CV-02-465, slip op. at p. 2 (M.D. Pa. May 17, 2002) (Vanaskie, C.J.).

Furthermore, an inmate's claim for injunctive  relief fails to present a case or controversy once the inmate has been transferred.  <u>Wahl v. McIver</u>, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); <u>see</u> <u>also</u> <u>Carter v. Thompson</u>, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

On February 28, 2014, Plaintiff notified this Court that he had been been transferred to SCI-Camp Hill.[4] <u>See</u> Doc. 26.  There is no indication that Murray will be returned to the Franklin County Prison in the foreseeable future. Accordingly, Plaintiff's action to the extent that it seeks injunctive relief based upon actions which occurred during his prior confinement at the Franklin County Prison is subject to dismissal on the basis of mootness.

**<u>Personal Involvement</u>**

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat</u> <u>superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or

---

[4]    Shortly after the filing of this matter, Plaintiff notified the Court that he had been temporarily released from prison.  <u>See</u> Doc. 10.  Murray later returned to the Franklin County Prison in November 2013.  <u>See</u> Doc. 23.

occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976);

Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As

explained in Rode:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . .  [P]ersonal involvement
> can be shown through allegations of personal direction or of
> actual knowledge and acquiescence.  Allegations of
> participation or actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

## Prison Board

Plaintiff names the following members of the Franklin County Prison Board

as Defendants:   County Commissioners David Keller, Robert Thomas, and Robert

Ziobrowski; Sheriff Dane Anthony; President Judge Douglas Herman; Controller

Carol Diller; and District Attorney Matthew Fogal  (Prison Board Defendants).

The initial argument for dismissal asserts that the Prison Board Defendants

cannot be liable under a theory of respondeat superior and that although "Plaintiff

alleges that certain individuals serve on the Prison Board, he has failed to aver any

facts establishing or tending to establish that any of these individuals were

involved in issuing any policy which to the alleged violation of his civil rights" as

contemplated under Monell v. Department of Social Servs., 436 U.S. 658, 690-91

(1978).   Doc. 22, p. 6.  Defendants add that there are no facts asserted showing

that any Prison Board member had knowledge of, or involvement in the alleged misconduct directed towards Murray.

A municipal body or other local governmental unit, not part of a state for Eleventh Amendment purposes, may be a "person" subject to suit under 42 U.S.C. § 1983.  Monell, 436 U.S. at 690-91("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.") "Local governing bodies, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  Id.  See also Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 398, 403-07 (1997); Roman v. Jeffes, 904 F.2d 192, 196-97 (3d Cir. 1990); Illiano v. Clay Township, 892 F. Supp. 117, 121 (E.D. Pa. 1995).

However, it has been repeatedly held that a local government unit may not be subjected to § 1983 liability on a theory of respondeat superior.  Bryan County, 520 U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 392 (1989); Pembaur v. Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 691; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).  Rather, "... a plaintiff seeking to impose liability

on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bryan County</u>, 520 U.S. at 403; <u>Beck</u>, 89 F.3d at 971.  In <u>Bryan County</u>, the United States Supreme Court elaborated on the showing required for municipal liability under § 1983, stating:

> . . . [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

<u>Id</u>. at 404; <u>see</u> <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1213 (3d Cir. 1996).

The United States Court of Appeals for the Third Circuit has held that liability under § 1983 exists "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" <u>Andrews</u>, 895 F.2d at 1480 (citing <u>Monell</u>, 436 U.S. at 694).  Custom can be established by proof of knowledge and acquiescence.  <u>Fletcher v. O'Donnell</u>, 867 F. 2d 791, 793-4 (3d Cir. 1989).

With respect to the Prison Board Defendants, there are no facts alleged that they engaged in deliberate conduct which led to the alleged inadequate conditions

of Murray's confinement i.e., (recreation, illumination, and administrative segregation claims).  In regards to those contentions, this is simply not a case where liability is being asserted based upon  official knowledge and adoption of the violation by the Prison Board Defendants.   Accordingly, the Prison Board Defendants are entitled to entry of dismissal on the basis of lack of personal involvement with respect to those claims.

In light of the liberal standards applied to <u>pro</u> <u>se</u> submissions, an application of the <u>Iqbal</u> and <u>Twombly</u> criteria to Defendants' arguments and the allegations set forth in the Complaint, it is apparent to this Court that Plaintiff, at least at this juncture of the proceedings, has sufficiently alleged personal involvement by the Prison Board Defendants with respect to his allegation that the prison had a fiscal policy in place which permitted the removal of monies from his inmate account to pay room and board assessments.  In fact, Defendants' supporting brief indicates that such a room and board fee policy was authorized by the Prison Board.  <u>See</u> Doc. 22, p. 17.

Pursuant to the above discussion, the unopposed request for dismissal in favor of the Prison Board Defendants on the basis of lack of personal involvement will be granted with exception of the room and board fee policy related claim.

**<u>Prison Officials</u>**

11

Also named as Defendants are the following seven (7) employees of the

Franklin County Prison: Warden Keen; Deputy Wardens Rouzer and Weller;

Deputy of Inmate Records Lemaster; Business Director Heckman; Intake Nurse

Jane Doe; and Director of Treatment Sterner (Prison Defendants).  With exception

of Nurse Jane Doe, the Prison Defendants seek entry of dismissal on the grounds

that the claims against them are improperly based upon  a theory of respondeat

superior.  See Doc. 22, p. 6.

As previously discussed, a plaintiff is required under Rode to show, via the

allegations in the complaint, that each defendant was personally involved in the

actions which underlie a claim.   Inmates also do not enjoy a constitutional right to

a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union,

433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723

at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

2001)("[T]he existence of a prison grievance procedure confers no liberty interest

on a prisoner").  Consequently, any attempt by a prisoner plaintiff to establish

liability against any correctional official solely based upon the substance or lack of

response to his institutional grievances does not by itself support a constitutional

due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d

Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983

liability).

Based upon an application of the above, well established  standards, the unopposed request for dismissal will be granted in favor of the Prison Defendants to the extent Plaintiff is seeking to assert liability against them based upon either their respective supervisory positions or their handling of any administrative grievances and complaints.   There are also no factual assertions set forth in the Complaint which could support a claim that any of the Prison Defendants had personal involvement in Murray's administrative custody placement which the inmate attributes solely to Nurse John Doe.  Likewise, there are no facts presented by Murray showing involvement or acquiescence by any Prison Defendants in the alleged retaliatory increase in lighting outside of his cell.

However, given the liberal treatment afforded to pro se filings, the Court will accept at this stage of the proceedings that the Warden and Deputy Wardens had knowledge of the conditions including cell lighting and recreational opportunities which existed within the Franklin County Prison during the relevant time period.  Accordingly, the unopposed request for dismissal be granted in favor of the Prison Defendants with exception of the cell lighting and recreation based claims against Warden Keen and Deputy Wardens Rouzer and Weller.

**Administrative Segregation**

Following his arrival at he  Franklin County Prison as a pre-trial detainee, Murray states that he was processed by Intake Nurse Jane Doe who allegedly improperly assigned him to  administrative segregation for eleven (11) days. as having mental health issues.  The Complaint asserts that this placement was improper as Murray did not have any history of mental health problems, had not been issued any type misconduct charge, and was not afford with a hearing as to the reasons for his administrative custody designation.  <u>See</u> Doc. 1, ¶ 22.  Murray also maintains that Nurse Doe's decision was retaliatory, the result of her purported personal dislike for the Plaintiff.[5]

Defendants contend that Plaintiff's placement in segregation for eleven days without an opportunity to be heard did not violate his due process rights as he was not deprived of a protected liberty interest.  <u>See</u> Doc. 22, p. 9.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  <u>See</u>  <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).  A protected liberty interest may be created by

---

[5]    There are no facts alleged establishing why Nurse Doe disliked Murray.

either the Due Process Clause itself or by state law.  Id.  Due process requirements

apply only when the prison officials' actions impose "an atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at

484.  Conversely, there can be no due process violation where there is no protected

liberty interest.

The United States Supreme Court in Sandin, shifted the focus of liberty

interest analysis from one "based on the language of a particular regulation" to "the

nature of the deprivation" experienced by the prisoner.  Id. at 481.  In Sandin, the

Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response

to a wide range of misconduct" is expected as part of an inmate's sentence.  Id. at

485.  Courts within this circuit, applying Sandin in various actions, have found no

merit in due process claims presented regarding short term institutional

administrative custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d

Cir. 2002)(placement in segregation as a disciplinary sanction did not implicate a

protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08  (3d Cir.

1997)(no liberty interest in avoiding fifteen (15) month placement in

administrative custody because said confinement was not atypical).

Prisoners simply have no due process protected right not to be placed in

segregation because such placement is not an "atypical and significant hardship in

relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484; <u>Smith v.</u>

<u>Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002)("confinement in administrative or

punitive segregation will rarely be sufficient, without more, to establish the kind of

'atypical' deprivation of prison life necessary to implicate a liberty interest.")

Considering the rules of law set forth in <u>Sandin</u> and the subsequent line of

decisions by the Third Circuit Court of Appeals, this Court finds that Plaintiff's

action to the extent that it alleges that he was improperly placed in administrative

custody for eleven (11) days upon his entry into the prison is meritless because the

magnitude of his relatively brief placement in segregation  did not implicate a

protected liberty interest.   The unopposed request for dismissal of this claim will

be granted.[6]

## **Conditions of Confinement**

A claim by a pre-trial detainee that he was subjected to unconstitutional

conditions of confinement is reviewed under the Due Process Clause of the Fifth

Amendment. <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  The applicable test is whether

the challenged conditions amount to punishment prior to an adjudication of guilt

---

[6] Since there is no allegation that Plaintiff was retaliated against by Nurse Doe
for engaging in constitutionally protected activity, a viable retaliation claim has also
not been asserted said Defendant.   <u>See</u>  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir.
2001).

under the Due Process Clause.  "Absent a showing of express intent to punish, the determination will normally turn on whether the conditions have an alternative purpose and whether the conditions appear excessive in relation to that purpose." Nelson v. Hill, 2006 WL 3741849 *1  (3d Cir  Dec. 20, 2006).  The Third Circuit Court of Appeals has observed that claims by pre-trial detainees have parameters that are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment.  Keller v. County of Bucks, 2006 WL 3779749 *3 (3d Cir.  Dec. 22, 2006).

An inmate must allege that a condition of confinement is so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life.  See  Wilson v. Seiter, 501 U.S. 294, 298 (1991).   The prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities."Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d

Cir. 2000).

A conditions of confinement claim against a prison official must meet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."[7]  Farmer, 511 U.S. at 834 (1994).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety."  Id.  In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.

**Recreation**

Plaintiff claims that the conditions of his pre-trial confinement were unconstitutional because the prison has no outdoor recreation/yard.  See Doc. 1, ¶ 42.  Murray concludes that such a deprivation of outdoor exercise is unconstitutional.  There is no allegation that Murray was denied any exercise

---

[7]   Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

opportunities whatsoever or that he suffered any accompanying physical injury.[8]

Defendants assert that a denial of access to outdoor recreation is not unconstitutional provided that some form of exercise is permitted and the totality of the conditions of confinement do not violate the Constitution.  See Doc. 22, p. 15.  As previously noted, this argument is unopposed.

Plaintiff was confined in the Franklin County Prison from August 27, 2012 until approximately March 25, 2013.  He later returned to that facility in November 2013 and remained there until February 2014.  It is well settled that temporary denial of exercise with no medical effect is not a substantial deprivation under the Eighth Amendment.  Gattis v. Phelps, 344 Fed. Appx. 801, 805, (3d Cir. 2009).  Courts have similarly recognized that the denial of recreation for a thirteen (13) day period does not amount to cruel and unusual punishment.  Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989).

In Gattis, the Third Circuit Court of Appeals  noted that minimal provision of exercise and recreation can satisfy the Constitution.   Gattis, 344 Fed. Appx. at 805 (limited exercise with no guarantee of outdoor recreation does not implicate

---

[8]   Thus precluding an award of compensatory damages.  See Allah v. Al-Hafeez,  226 F.3d 247,250  (3d Cir. 2000), (where a plaintiff fails to allege actual injury, 42 U.S.C. § 1997e(e) bars recovery of compensatory damages).

the Eighth Amendment). A denial of exercise or recreation only results in a

constitutional violation "if such denial is sufficiently serious to deprive the

prisoner of the minimal civilized measure of life necessities." Id.

Based upon a liberal reading of the pro se Complaint, this is not a case where

is a prisoner is alleging denial of all recreation or exercise opportunities. Rather,

Murray contends only that he was denied outdoor exercise and recreation during

the approximately seven (7) months he was held as a pre-trial detainee.[9] Since

there is no assertion that Murray was denied any exercise or recreation, this Court

agrees that under the rationale set forth in Gattis, the alleged denial of outdoor

recreation was not sufficiently serious to deprive the prisoner of the minimal

civilized measure of life necessities. See Gregorio v. Aviles, No. 11-2771, 2013

WL 1187096 *6 (D.N.J. March 20, 2013)(dismissing claim of denial of outdoor

recreation to pre-trial detainee for ten months); Miller v. Trometter, No. 4:11-cv-

811, 2012 WL 5933015 * 11 (M.D. Pa. Nov. 27, 2012)(Nealon, J.); Wyland v.

Brownfield, No. 08-1601, 2011 WL 5445305 * 7 (W.D. Pa. Nov. 9,

2011)(dismissing claim of denial of outdoor exercise where Plaintiff failed to

allege that he was precluded from any form of exercise or that he sustained a

_____

[9]   It is noted that a significant portion of the period at issue consisted of cold
weather months where outdoor recreation may not have been an option.

specific injury from lack of exercise).  The unopposed request for dismissal of the

lack of outdoor recreation claim will be granted.

**Illumination**

Murray alleges that he suffered sleep deprivation, eyesight problems,  and

headaches from the constant illumination from the lighting in his cell.  Plaintiff

adds that in retaliation for filing a grievance regarding the interior cell lighting, the

lights outside the cell are now also continuously left on at night.  See  Doc. 1,  ¶ 26.

Defendants seek dismissal of those claims on the basis that Murray does not aver

any facts demonstrating deliberate indifference.  See Doc. 22, p. 10.

It is initially noted, that this Court has concluded that due to Plaintiff's

failure to identify the prison official[s] who was responsible for the alleged

increase in the lighting outside his cell, a viable retaliation claim has not been

stated.  See Lape v. Pennsylvania, 157 Fed. Appx. 491, 498 (3d Cir. 2005); Krouse

v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997)(only where the facts

of a particular case are "unusually suggestive" of a retaliatory motive will temporal

proximity, standing alone, support an inference of causation.

It has been recognized that "continuous exposure to low wattage night time

security lighting may be permissible based on legitimate security concerns."  Sims

v. Piazza, 2009 WL 3147800 *23  (M.D. Pa. Sept. 28, 2009)(Kosik, J.); King v.

<u>Frank</u>, 371 F. Supp.2d 977, 984-85 (W.D. Wisc. 2005). Similarly, in <u>Brown v.</u>

<u>Martinez</u>, 2007 WL 2225842 * 8 (M.D. Pa. July 31, 2007) it was concluded that

the presence of a 15 watt security night light in a prisoner's cell was necessary for

night time institutional security and thus did not give rise to a constitutional

violation. [10]

However, requiring inmates to live in constant illumination may under

certain circumstances rise to the level of a constitutional violation. <u>Bacon v.</u>

<u>Minner</u>, 229 Fed. Appx. 96, 100 (3d Cir. 2007). In <u>Bacon</u>, the Court of Appeals

concluded that a claim that the main lights in a segregated housing unit which

"were turned on between the hours of 8:30 am and 11:30 pm" as well as between

"4:45 am and 7:00 am" did not rise to the level of a constitutional violation

because the plaintiff did not allege that he was subject to constant illumination or

had suffered any significant medical problem due to the purportedly excessive

illumination. The Court concluded that Inmate Bacon's claims "were not

objectively serious to warrant constitutional protection." <u>Id</u>.

Unlike <u>Bacon</u>, the present Complaint claims that the purported excessive

lighting caused Murray to suffer lack of sleep; optical problems, and headaches.

Given that this Court is required, when considering a motion to dismiss, to accept

---

[10]   The wattage and type of interior cell lighting at issue herein is unclear.

as true the pro se allegations in the Complaint that constant illumination in the

Franklin County Prison caused Plaintiff to suffer multiple medical problems, the

claim that the prison lighting violated Murray's rights under the Eighth

Amendment is sufficient to withstand scrutiny under Rule 12(b)(6).  See Erler v.

Dominguez, 2011 WL 781528 * 6  (N.D. Ind. Feb. 28, 2011).  This claim will be

allowed to proceed against Warden Keen and Deputy Wardens Rouzer and Weller.

**Blankets**

Plaintiff states that prior to entering the prison he was diagnosed as suffering

from tendonitis in his shoulders.  See Doc. 1, ¶ 39.  Murray's remaining allegation

is that he was granted a medical exemption by a Doctor Tonya which allowed him

to be "under my covers" on his bed from 6:30 a.m. to 6:30 p.m..  See Doc. 1,

Exhibit C.  However, despite having medical authorization and his status asa pre-

trial detainee, prison officials have refused to allow him to stay under the blanket

during the daytime hours thereby aggravating the tendonitis in his shoulders.

In addition to their previously discussed meritorious lack of personal

involvement argument with respect to this claim, Defendants also contend that this

allegation fails to establish any deliberate indifference on the part of the

Defendants.  See Doc. 22, p. 12.  They note that an exhibit (Doc. 1, Exhibit D)

attached to the Complaint contradicts Murray's claim that he was granted medical

23

authorization to be under his covers during the daytime hours.  Moreover, there is no claim by Plaintiff the conditions in his cell jeopardized his health or that his cell was unfit for habitation.

As previously discussed by this Court, prison officials must provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs.  See  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

In addition to showing conditions that pose a risk of serious harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.  A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511

U.S. at 837.

Exhibit D which is attached to Plaintiff's Complaint states  that there was no authorization in Murray's prison medical records which allowed him to be under the covers all day and that prison policy does not allow for prisoners to be under their covers all day long.  In light of that submission, this Court agrees the Complaint contains contradictory factual information as to whether Plaintiff was given a medical exemption which allows him to be under the covers of his bed throughout the daytime hours.

More importantly, this is not a case where a prisoner is alleging that he was denied bedding and blankets.  Likewise, this is not a case where a prisoner is asserting that he had  to sleep in a cold cell.  Rather, Plaintiff alleges only that he was not allowed to be under the covers during the daytime hours, a prohibition that allegedly aggravated his pre-existing condition..

Based upon an application of the standards announced in Farmer and Wilson to the Plaintiff's allegation, the challenged requirement that Murray not be under a blanket in his cell during the daytime hours was  not a deprivation of such magnitude as to set forth a viable claim under the Eighth Amendment.  This is simply not a case where Plaintiff has alleged that a prison official acted with deliberate indifference to a known objectively serious risk to a prisoner's health or

safety.

**Room and Board**

Plaintiff's remaining allegation asserts that prison officials acted improperly by deducting money from his inmate account for room and board.   Murray adds that such deductions are unlawful as they are not authorized by Pennsylvania state law.  Defendants, relying on  Tillman, argue that said claim is meritless because "charging inmates a flat per diem rate does not per se violate the Eighth Amendment."  Doc. 22, p. 15.

The Third Circuit Court of Appeals has recognized the collection of fees as partial reimbursement of a prisoner's daily cost of maintenance cannot be classified as a fine as contemplated under the Eighth Amendment.  Tillman, 221 F. 3d at 420.  It has held that such fees are not punishment but rather are designed to teach financial responsibility.  See id.

Moreover, it has been held a county prison fiscal responsibility policy such as the one challenged herein which charges inmates for room and board is constitutionally acceptable.  See Heim v. Dauphin County Prison, 2013 WL 1833777 * 6  (M.D. Pa. May 1, 2013)(Caputo, J.) (the room and board fees of the are not unreasonable, punitive, or exceeds the average per diem cost the Dauphin County Prison pays to house an inmate).   The Third Circuit Court of Appeals has

also recognized that a pre-trial detainees may also be required to pay room and board fees.  Carson v. Mulvihill, 488 Fed. Appx. 554, 563  (3d Cir. 2012)(room and board fees do not violate the requirement that pre-trial detainees not be subject to punishment).

Pursuant to the holdings of Tillman, Heim, and Carson, since there is no contention that the Franklin County room and board fees were excessive Defendants' request for dismissal of the challenge to the prison's  room and board fee policy will also be granted.  An appropriate Order will enter.


BY THE COURT:


s/Matthew W. Brann
Matthew W. Brann
United States District Judge