# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN CHRISTIAN MURRAY, :
:
    Plaintiff, :
:
v. : No.: 4:13-CV-258
:
DANIEL S. KEEN, ET AL., : (Judge Brann)
:
    Defendants. :

## MEMORANDUM OPINION

## September 11, 2017

**I.**    **BACKGROUND**

This *pro se* civil rights action was initiated by Shawn Christian Murray regarding events which allegedly transpired during his prior confinement as a pre-trial detainee at the Franklin County Prison, Chambersburg, Pennsylvania.[1] Remaining Defendants are the following officials of the Franklin County Prison: Warden Daniel Keen, and Deputy Wardens Russell Rouzer and Michelle Weller.[2]

By Memorandum and Order dated March 11, 2014, Defendants' motion to dismiss the Complaint was partially granted. *See* Doc. 28. As a result of that decision, the only remaining claim alleges that the Remaining Defendants

---

[1] The Plaintiff has been released from prison and is residing in Fayetteville, Pennsylvania.

[2] Keen and Rouser are no longer employed at the prison.

-1-

subjected Plaintiff to constant illumination which caused him to suffer sleep deprivation, eyesight problems, and headaches.

Plaintiff states that he entered the Franklin County Prison as a pre-trial detainee on August 27, 2012. *See* Doc. 1, ¶ 22. Murray remained confined in the Franklin County Prison until approximately March 25, 2013. He later returned to that facility in November 2013 and remained there until February 2014. The Complaint contends that throughout the course of Plaintiff's confinement in the Franklin County Prison, he suffered sleep deprivation, eyesight problems, and headaches from the continuous lighting in the cells.

Presently pending is Remaining Defendants' motion for summary judgment. *See* Doc. 62. The opposed motion is ripe for disposition.

**II.    DISCUSSION**

Remaining Defendants seek entry of summary judgment on the grounds that: (1) any claims against them in their official capacities are barred; (2) the claim of excessive lighting is constitutionally insufficient; and (3) they are entitled to qualified immunity.

**A.    Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c); *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex,* 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

> B.   **Official Capacities**

Remaining Defendants assert that since they are county employees the claims against them in their official capacities are actually claims against Franklin County. The initial summary judgment argument contends that since that Plaintiff has not asserted a claim of municipal liability against Franklin County, the official capacity claims against the individual Remaining Defendants cannot proceed. *See* Doc. 63, p. 8. Plaintiff counters that his official capacity claims should proceed because twenty-four (24) hour lighting is a standing operating procedure of the Franklin County Prison.[3]  *See* Doc. 68, p. 6.

A municipal body or other local governmental unit may be a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978)("Congress *did* intend municipalities and other local

---

[3] No such claim is set forth in the Complaint.

government units to be included among those persons to whom § 1983 applies." It is well settled that a § 1983 claim against a state official in his or her official capacity should be treated as a claim against the State. *See Hafer v. Melo*, 502 U.S. 21 (1991). It has been similarly recognized that § 1983 claims against individual county officials, such as the Remaining Defendants, in their official capacities "represent another way to sue the municipality of which the officer is an agent." *Pennavaria v. Walton*, No. 10-cv-415, 2010 WL 2650413 *4 (W.D. Pa. June 30, 2010). As such, official capacity claims against such individual defendants are subject to dismissal since such claims cannot only be brought against the government unit itself, in this case Franklin County.[4] *See id.*; *Brice v. City of York*, 528 F. Supp.2d 504, 526 n. 19 (M.D. Pa. 2007)

It is beyond dispute that Franklin County has not been named as a Defendant in this matter. Additionally, the Complaint does not identify any Franklin County policy regarding the use of illumination. Moreover, there is no allegation raised in the Complaint that the purported use of excessive illumination (if it can be said to be excessive) resulted from a Franklin County policy, practice, or custom. Based upon an application of the above standards, the Court will grant the request for

---

[4] If Franklin County had been named as a defendant, the official capacity claims against the individual county employees would have merged with the claims against Franklin County.

entry of summary judgment with respect to the official capacity claims against the individual Remaining Defendants.[5]

### C. Constant Illumination

Murray alleges that he suffered sleep deprivation, eyesight problems, and headaches from the constant illumination from the lighting in his cell. He adds that in retaliation for filing a grievance regarding the interior cell lighting, the lights outside the cell were continuously left on at night.[6]  *See*  Doc. 1, ¶ 26.

Remaining Defendants maintain that this claim should not proceed because the use of constant low wattage lighting employed for institutional security and safety needs is constitutionally acceptable. *See* Doc. 63, p. 11. They elaborate that since the prison's nighttime lighting uses seven (7) watt bulbs which are employed for legitimate security and safety concerns and the cells are not painted with reflective paint, Murray was not exposed to an unconstitutional condition of confinement.

---

[5] Furthermore, for the reasons set forth below, any such nighttime security lighting policy or procedure would be constitutionally acceptable.

[6] This assertion is undermined by Plaintiff's subsequent contention that the use of nighttime security lighting was standard operating procedure.

Defendants further argue that Murray has not produced any evidence of actual injury caused by the lighting and that a review of institutional records shows that neither Murray nor any other inmate ever raised complaints about the lighting. Murray vaguely counters that there are material facts in dispute as to how bright the light was and as to whether he suffered physical and psychological damage from the constant illumination. *See* Doc. 68.

As previously discussed by this Court, since Murray was a pre-trial detainee during the relevant time period, his claim of being subjected to an unconstitutional condition of confinement must be reviewed under the Due Process Clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520 (1979). It must be determined whether the challenged condition amounts to punishment prior to an adjudication of guilt under the Due Process Clause.

 "Absent a showing of express intent to punish, the determination will normally turn on whether the conditions have an alternative purpose and whether the conditions appear excessive in relation to that purpose." *Nelson v. Hill*, 211 Fed. Appx. 88, 90 (3d Cir 2006). The United States Court of Appeals for the Third Circuit has observed that claims by pre-trial detainees have parameters that are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment. *Keller v. County of Bucks*, 209 Fed. Appx. 201, 205 (3d

Cir. 2006).

An inmate must allege that a condition of confinement is so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000).

A conditions of confinement claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."[7] *Farmer,* 511 U.S. at 834 (1994). In prison conditions cases, "that state of

---

[7] Under *Farmer*, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a

-8-

mind is one of 'deliberate indifference' to inmate health or safety." Id. In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.

In support of their summary judgment argument Remaining Defendants have submitted a declaration under penalty of perjury by ex-Warden Daniel Keen. *See* Doc. 64-2. Keen states that during the relevant time period, the Franklin County Prison used a lighting system that did not create constant illumination. Rather, the Warden states that during the daytime hours from 6:00 a.m. until 10:00 p. m. the cell blocks are lit with forty (40) watt bulbs and two twenty-eight (28) watt bulbs over the commode and sink in each cell. *See id.* at ¶ 11. Keen adds that from 10:00 p. m. until 6:00 a. m. daily a seven (7) watt security night light is used to ensure both safety and security.

The former Warden acknowledges that the use of the security night light was approved by the Franklin County Commissioners. Keen adds that the security light is only used at night, gives off minimal illumination, and inmates can avoid the

---

substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

light by simply covering their eyes or turning their backs to the wall. *See id.* at ¶ 15. The use of the security night light is non-punitive and allows correctional officers to ensure that inmates are present and safe in their cells during their security rounds conducted every thirty minutes. These lights also enable prison staff to move through the cell blocks and permit inmates to safely utilize the toilet facilities in their respective cells. Finally, Keen notes that the cells walls throughout the facility are painted a non-reflective shade of gray.

Also submitted is a declaration under penalty of perjury by Franklin County Deputy Warden Michelle Weller which echos Keen's description of the lighting system. *See* Doc. 64-3. Weller additionally asserts that Murray did not file any institutional grievance regarding the lighting during the course of his relatively brief January 14, 2011-April 8, 2011 incarceration. *See id.* at p 30.

During his deposition testimony, Murray admitted that he has worn eyeglasses since he was a child. *See* Doc. 65-3, p. 7. Other undisputed records submitted by the Remaining Defendants show that as of 2009 Murray had been diagnosed as suffering from a litany of medical difficulties: post traumatic stress disorder, depression, panic attacks, night terrors, bipolar disorder, herniated discs, restless leg syndrome, substance abuse, anemia, Hepatitis C, and chronic fatigue. *See* Docs. 66-5, 66-8, 66-11, p. 2.

Murray has not provided any expert testimony or evidence which could establish that he suffered any actual injury as a result of his exposure to constant illumination. While Plaintiff has submitted medical records showing that his eyesight has worsened, there is no competent evidence showing that any impairment of vision decrease was due to the nighttime security lighting rather than a consequence of the aging process.[8] He also does not dispute that the nighttime security lighting served a legitimate safety and security purpose.

Requiring inmates to live in constant illumination may under certain circumstances rise to the level of a constitutional violation. *Bacon v. Minner*, 229 Fed. Appx. 96, 100 (3d Cir. 2007). In *Bacon,* our Court of Appeals recognized that a claim that the main lights in a segregated housing unit "turned on between the hours of 8:30 am and 11:30 pm" as well as between "4:45 am and 7:00 am" did not rise to the level of a constitutional violation because the plaintiff did not allege that he was subject to constant illumination or had suffered any significant medical problem due to the purportedly excessive illumination. The Court of Appeals concluded that Inmate Bacon's claims "were not objectively serious to warrant constitutional protection." *Id.*

---

[8] It is undisputed that Plaintiff has worn eyeglasses since he was a child.

A subsequent Third Circuit decision, *Stewart v. Beard*, 417 Fed. Appx. 117 (3d Cir. 2011), held that the use of a nine (9) watt low intensity nighttime security light was constitutional. Here, the Court of Appeals indicated that such lighting was acceptable because there was a legitimate penological objective, inmates were able to cover their eyes from the light, and there had been no showing that the lighting caused any physical or mental problems.

Other courts have likewise recognized that continuous exposure to low wattage night time security lighting may be permissible if based on legitimate security concerns. *See Spencer v. Wetzel,* No. 12-CV-616, 2014 WL 1056424 *4-5 (M. D. Pa. March 17, 2014)(Kosik, J.). Similarly, in *Brown v. Martinez*, No. 3:03-CV-2392, 2007 WL 2225842 * 8 (M.D. Pa. July 31, 2007)(Vanaskie, J.) this Court concluded that the presence of a fifteen (15) watt security night light in a prisoner's cell was necessary for night time institutional security and thus did not give rise to a constitutional violation.

In the matter at hand, the uncontradicted evidence show that the Franklin County Prison used seven (7) watt nighttime security lighting. This type of low wattage security lighting has been repeatedly found to be constitutionally acceptable, as noted above. The Remaining Defendants have also provided evidence showing that the walls of Plaintiff's cell were painted with non-reflective

paint and that Murray could avoid exposure by simply turning away from the light or covering his eyes. Additional supporting evidence submitted by the Remaining Defendants, namely the declarations of ex-Warden Keen and Deputy Warden Weller, clearly establish that the prison's low wattage nighttime security lighting was employed for legitimate security needs, namely institutional security and the safety of both prisoners and staff.

Although the Complaint alleges that Plaintiff suffered multiple medical problems as a result of the constant illumination, Murray has not come forward with any competent medical evidence to support his contention that his medical ailments were caused by the challenged nighttime security lighting. However, Remaining Defendants have provided the Court with copies of Plaintiff's medical records showing that he suffered from poor vison, multiple mental health and physical problems, including depression, panic attacks, and night terrors prior to entering the prison. Those submissions undermine Murray's bald contention that he suffered physical and mental injury from the challenged lighting. Pursuant to the above discussion, Plaintiff has failed to create an issue of material fact with respect to the question of whether he suffered any medical problems from the constant (and in large part low wattage) illumination.

Based upon an application of the standards set forth in *Stewart, Spencer,* and *Brown* to the undisputed facts, the Remaining Defendants are entitled to entry of summary judgment as the use and magnitude of the challenged nighttime security lighting was within acceptable constitutional parameters; moreover, the Plaintiff has failed to show any actual injury caused by the challenged lighting. This is simply not a case where a prisoner was subjected to a condition of confinement which could be deemed inhumane under contemporary standards.

III. **CONCLUSION**

Pursuant to the above discussion, I conclude that the Remaining Defendants' unopposed request for of summary judgment should be granted. In light of that conclusion a discussion of the Remaining Defendants' additional qualified immunity argument is not required.[9] An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[9] However, based upon the multiple decisions recognizing that nighttime low wattage security lighting is acceptable, the qualified immunity argument is meritorious. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)("government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").